UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL DIABOLIS GRIFFIS, SR.,

                Petitioner,

v.

LES PARISH,

                Respondent.

_____/

Case No. 1:18-cv-149

Honorable Janet T. Neff

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Michael Diabolis Griffis, Sr. is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Michigan.  Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct toward a person under the age of 13, in violation of Mich. Comp. Laws § 750.520b(2)(b).  On January 13, 2014, the court sentenced Petitioner as a habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 50 to 75 years.

On February 2, 2018, Petitioner filed a habeas corpus petition in this Court, raising the following grounds for relief:

    I.      THE TRIAL COURT VIOLATED THE PETITIONER'S SIXTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION TO WAIVE HIS RIGHTS TO THE ASSISTANCE OF STATE APPOINTED COUNSEL AND PROCEED IN PROPRIA PERSONA, WHEN IT IGNORED PETITIONER'S REQUEST TO REPRESENT HIMSELF AND FORCED HIM TO PROCEED WITH APPOINTED COUNSEL IN TRIAL.

    II.     DID THE TRIAL COURT VIOLATE THE PETITIONER'S SIXTH AMENDMENT RIGHT TO CONFRONTATION AND THE DUE

PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY DENYING . . . THE PETITIONER THE RIGHT TO PRESENT A DEFENSE AND A FAIR TRIAL WHEN IT ALLOWED THE PROSECUTION TO QUESTION THE PETITIONER WITH NON-DISCOVERED IMPEACHMENT EVIDENCE "(SPC) SPECIAL PAROLE CONDITION #22" AND NON-DISCOVERED "JAIL RECORDED TELEPHONE CALLS" AFTER THE OBJECTION BY DEFENSE AND THE DENIAL OF PETITIONER'S MOTION "TO REOPEN PROOFS["] TO ADDRESS AND CONFRONT THE EVIDENCE AGAINST HIM.

III.    DID THE TRIAL COURT VIOLATE THE PETITIONER'S RIGHTS TO A FAIR AND IMPARTIAL TRIAL INHERENT WITHIN THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN IT FOUND THAT THE PROSECUTOR'S ACTIONS WERE NOT INTENTIONAL, MALICIOUS, OR A VIOLATION OF THE ATTORNEY ETHICS AND CODE OF CONDUCT BECAUSE THE PETITION DID NOT PROVE ANY WITNESSES PERJURED THEMSELVES.

IV.    DID THE TRIAL COURT VIOLATE[] THE PETITIONER[']S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF THE UNITED STATES CONSTITUTION IN CONVICTING THE PETITIONER OF CRIMINAL SEXUAL CONDUCT FIRST DEGREE BASED UPON THE "INSUFFICIENT EVIDENCE" PROFFERED IN THE TRIAL.

V.    DID THE TRIAL COURT VIOLATE[] THE PETITIONER'S RIGHT TO A FAIR TRIAL INHERENT WITHIN THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT WHEN IT FOUND THAT MCL 764.27a "OTHER ACTS" WITNESS RAIN MARTINEZ TESTIMONY DID NOT VIOLATE FRE 403 UNDER "WATKINS" AND ALLOWED UNRELIABLE AND PREJUDICIAL TESTIMONY INTO EVIDENCE.

VI.    DID THE TRIAL COURT VIOLATE THE PETITIONER'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN IT FOUND PETITIONER'S TRIAL ATTORNEY WAS NOT "INEFFECTIVE[."]

(Pet., ECF No. 1, PageID.17-20, 23-24, 26-27, 30, 33.)

Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they procedurally defaulted and/or meritless.  Petitioner has filed an

"amended" petition (ECF No. 15), restating essentially the same grounds for relief as in his original petition.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds for relief are meritless and/or procedurally defaulted. Accordingly, I recommend that the amended petition be denied.

## Discussion

### I.     Background

Petitioner's jury trial commenced on December 10, 2013, and ended on December 13, 2013. At the trial,

> the victim testified that during 2008 and 2009, she and her siblings visited defendant at a home he shared with his girlfriend. The victim testified that on one occasion, she was watching television with defendant when she fell asleep. When the victim awoke, defendant was naked and masturbating while watching a pornographic video. Defendant had the victim remove her pants, and he licked her vagina. On another occasion, defendant told the victim to go to his room in the upstairs of the house. Five minutes later, defendant entered his room, made the victim remove her pants, and again licked her vagina.
>
> After the victim testified at trial, the trial court held an evidentiary hearing to address the admission of the testimony of the daughter of defendant's girlfriend under MCL 768.27a. The girlfriend's daughter was to testify that that there was an incident when defendant told her to lie down on a couch. After the girlfriend's daughter lay on her back, defendant went "up and down" on her "girl parts" with his penis. During the incident, defendant had his girlfriend's daughter watch a pornographic video. After defendant stopped going up and down on her, he sat down and told the girl to suck his penis. Defendant then "peed" in her mouth. Defendant objected to the admission of the girlfriend's daughter's testimony on the ground that her testimony was unreliable and, therefore, unfairly prejudicial under MRE 403. After the evidentiary hearing, the trial court admitted the girlfriend's daughter's testimony under MCL 768.27a.

*People v. Griffis*, No. 320033, 2015 WL 2213711, at *2 (Mich. Ct. App. May 12, 2015).

After the close of proofs, the jury convicted Petitioner of two counts of first-degree criminal sexual conduct with a child under the age of 13, and the trial court sentenced him to 50 to 75 years of imprisonment for each count, with credit for time spent in jail.

Petitioner appealed his conviction and sentence to the Michigan Court of Appeals. The Michigan Court of Appeals upheld his convictions but remanded his case to the trial court for "resentencing or re-articulation of its sentence and for review of defendant's jail credit." *Id.* at *8. Petitioner apparently waived his right to resentencing.

Petitioner filed for leave to appeal the Michigan Court of Appeals' decision to the Michigan Supreme Court, which denied leave to appeal on May 6, 2016, because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Griffis*, 877 N.W.2d 904 (Mich. 2016) (table).

On July 26, 2016, Petitioner filed a motion for relief from judgment in state court. The court denied his motion on August 16, 2016 (Order Denying Def.'s Mot. for Relief from J., ECF No. 10-20), and denied a motion for reconsideration on September 21, 2016 (Order Den. Def.'s Mot. for Recons., ECF No. 10-22).  Petitioner appealed the denial of his motion to the Michigan Court of Appeals, which denied leave to appeal on April 4, 2017, for "failure to establish that the trial court erred in denying the motion for relief from judgment." (04/04/2017 Mich. Ct. App. Order, ECF No. 10-23.)  Petitioner failed to file a timely appeal from that decision to the Michigan Supreme Court.  He asserts that the prison in which he was incarcerated would not provide the copies that he needed to file his appeal.  (*See* MDOC grievance materials, ECF No. 1-1.)

## II.  Legal Standards

### A. AEDPA Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA also requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan

appellate court is considered a decision on the merits entitled to AEDPA deference).   The

presumption, however, is not irrebuttable.  *Johnson*, 568 U.S. at 298.  Where other circumstances

indicate that the state court has not addressed the merits of a claim, the Court conducts *de novo*

review.  *See id.* (recognizing that, among other things, if the state court only decided the issue

based on a state standard different from the federal standard, the presumption arguably might be

overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-

court's decision was on the merits "may be overcome when there is reason to think some other

explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534

(2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

### B. Procedural Default

Respondent asserts that some of Petitioner's claims are procedurally defaulted.

When a state-law default prevents further state consideration of a federal issue, the federal courts

ordinarily are precluded from considering that issue on habeas corpus review.   *See Ylst v.*

*Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  "If a petitioner does

not satisfy the procedural requirements for bringing an error to the state court's attention – whether

in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar

federal review."  *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner

must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual

prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal

habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*,

547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*,

477 U.S. 478, 495 (1986).   The miscarriage-of-justice exception only can be met in an

"extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable

evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Nevertheless, federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### III.    Ground I:  Right to Self-Representation

Petitioner contends that the trial court deprived him of his Sixth Amendment right to proceed without counsel by ignoring his request to represent himself.

### A.  Trial Court Proceedings

Petitioner expressed dissatisfaction with his appointed attorneys on several occasions, but he never unequivocally invoked the right to represent himself.  Before the preliminary examination hearing, Petitioner's court-appointed attorney filed a motion to withdraw from the case because Petitioner did not wish to proceed with that attorney.  At a hearing on this motion, Petitioner told the court that

> I feel like he's not going to represent me to the best of his ability to do so and I don't want him to represent me and I don't even want to go forward with the

8

preliminary examination, I refuse his help. I need somebody that's going to fight for me and I don't feel like he's doing it so.

(3/6/2013 Hr'g Tr., ECF No. 10-2, PageID.159.)

The district court denied the motion because it did not find sufficient evidence to remove counsel.  (*Id.*, PageID.161.)  After the court announced its ruling, Petitioner announced that he would "not [be] coming back" for the preliminary examination later that day.  (*Id.*)

Petitioner's attorney again asked to withdraw from the case because he did not believe it would be in Petitioner's best interest for him to remain as counsel if Petitioner did not wish to be present for the preliminary examination.  (*Id.*, PageID.162.)  The court denied this request, finding that counsel was "completely competent" and that there were no grounds for removing him immediately before the scheduled preliminary examination.  (*Id.*, PageID.162-163.) Petitioner responded to this ruling by stating, "I'll represent myself."  (*Id.*, PageID.163.) Petitioner's attorney subsequently reiterated that it would be against Petitioner's interest to proceed with appointed counsel because Petitioner was asserting that he would not participate in the preliminary examination and he was "contemplat[ing]" representing himself.  (*Id.*, PageID.165.) The district court again denied the motion to withdraw.

Petitioner's attorney renewed the motion to withdraw at the beginning of the preliminary examination hearing that afternoon, and the district court denied it.  (3/6/2013 Preliminary Exam. Tr., ECF No. 10-3, PageID.170-171.)  Petitioner subsequently told the court that he did not wish to be present for the preliminary examination, so the court allowed him to leave.  (*Id.*, PageID.172-173.)

After the preliminary examination, Petitioner's counsel apparently filed a motion to withdraw in the circuit court, which granted the motion and appointed attorney Eusebio Solis to represent Petitioner.

Petitioner asked for a new attorney at a pre-trial hearing two months later.  He told the circuit court that he was not satisfied with Solis because Solis had not filed motions to suppress evidence and had not obtained Petitioner's medical records.  (5/31/2013 Mot. Hr'g Tr., ECF No. 10-4, PageID.228-229.)  Petitioner also told the court:

> I don't have a problem with working with Mr. Solis, but I just feel like, you know what I'm saying, things have to be done.  You can't do things at the last minute and -- and expect that, you know what I'm saying.  The Court is -- the remedy is going to be adjournment, you know, and put it off because you weren't prepared.  When you ha -- when you've had adequate time to prepare, you know.  Um, so, that's just really my entire issues, and I -- I feel like (inaudible) not going to take my life serious as far as this case goes, then I would have -- rather have somebody appointed that is willing to fight for me, because I'm -- I'm fighting for my life.  I'm innocent.

(*Id.*, PageID.229.)

The court denied the motion to replace counsel, finding that a motion to suppress would have been premature because Solis had only recently received a copy of the relevant evidence.  However, the court postponed the trial to give Petitioner more time for discovery.  (*Id.*, PageID.232-234.)

A few weeks later, Solis asked to remand the case back to the district court for another preliminary examination hearing, arguing that Petitioner's absence at the hearing prevented his attorney from effectively cross-examining the victim.  (7/8/2013 Mot. Hr'g Tr., ECF No. 10-5, PageID.240.)  The court granted the motion for a remand.  Another preliminary examination was held.  The victim gave testimony similar to the testimony at the first exam, and the case returned to the circuit court.

At a scheduling hearing two months later, Petitioner apparently got into an argument with Solis, part of which was captured on the record.  Petitioner stated, "I don't – you – man, I don't want you as my attorney.  I don't give a fuck.  Fuck them (inaudible) . . . .  And I'm

good.  And I won't be here for them hearings.  I'm not going with (inaudible) . . . . You can suck my dick."  (11/12/2013 Mot. Hr'g Tr., ECF No. 10-7, PageID.299.)

Solis subsequently filed a motion to withdraw, and the court held a hearing on the motion on November 25, 2013.  Petitioner told the court that he and Solis had not seen "eye-to-eye as far as what . . . paths we should take as far as defense is concerned[.]"  (11/25/2013 Mot. Hr'g Tr., ECF No. 10-8, PageID.308.)  Petitioner wanted Solis to file a motion to suppress evidence of other bad acts and was frustrated that it had taken so long for Solis to "reach" witness Angela Slager.  (*Id.*, PageID.309.)  The court confirmed that Solis had filed a motion to suppress evidence, but the motion was still pending.  (*Id.*, PageID.317.)  The court also confirmed that Solis had served a subpoena on Slager.  (*Id.*, PageID.306, 310.)  In other words, Petitioner's concerns had been addressed, so there was no basis for permitting withdrawal of counsel.

Petitioner's claim that he asked to represent himself is based solely on his statement "I'll represent myself," which he made at a hearing shortly before the preliminary examination. The trial court did not respond to this remark.  Instead, after further discussion with Petitioner's counsel, it denied counsel's motion to withdraw for the second time.

### B. State Court Decision

The Michigan Court of Appeals rejected Petitioner's Sixth Amendment claim, concluding that Petitioner's request to represent himself was not "unequivocal."  *Griffis*, 2015 WL 2213711, at *6.

> A defendant's request to proceed in propria persona must be unequivocal.  *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004).  Here, defendant's only request for self-representation was his brief statement "I'll represent myself," which defendant made in the context of his motion asking that Gardiner be removed from the case and be replaced with alternate counsel.  The district court did not abuse its discretion by implicitly denying defendant's request for self-representation when it reiterated its denial of the motion to withdraw.  Further, contrary to defendant's arguments, his constitutional right to self-representation

was not violated by failing to remove Gardiner as defense counsel because defendant's request for self-representation was not unequivocal. *Id.*

*Id.*

### C. Analysis

Like the appellate courts in Michigan, the Court of Appeals for the Sixth Circuit also requires a defendant to clearly and unequivocally assert a right to self-representation. *See United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally."); *see also United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004) ("We agree that *Faretta* procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed pro se."). Petitioner offers no authority to the contrary. Thus, he has not demonstrated that the state court's decision is contrary to, or an unreasonable application of, clearly established law.

Furthermore, the state court reasonably determined that Petitioner's statement was not a clear and unequivocal invocation of the right to self-representation. Petitioner simply asserted that he would represent himself when it became clear that the court would not grant his attorney's motion to withdraw. Petitioner did not ask the court to proceed without counsel, let alone invoke his right to self-representation. Indeed, it is not clear that he was even addressing the court when he made his statement, or that the court heard him. Even Petitioner's attorney believed that Petitioner was merely "contemplating" proceeding without counsel. Contemplating is not the same as clearly and unequivocally invoking a right.

Indeed, after the trial court denied the motion to withdraw for the second time, Petitioner never even hinted at a desire to proceed without counsel. To the contrary, just two months later, Petitioner expressed his desire that the court replace his attorney with *another attorney*. (*See* 5/31/2013 Mot. Hr'g Tr., ECF No. 10-4, PageID.229 ("I don't have a problem

working with Mr. Solis . . . . I would rather have . . . somebody appointed that is willing to fight for me . . . .".)  He did not ask the court to proceed *pro se*. In similar cases, where the defendant asked for substitution of appointed counsel after asserting a desire to proceed *pro se*, the Sixth Circuit has held that the request for new counsel amounts to a "waiver . . . of the right to self-representation." *United States v. Jackson*, 304 F. App'x 424, 429 (6th Cir. 2008); *cf. United States v. Bowker*, 372 F.3d 365, 386 (6th Cir. 2004) (trial court's denial of defendant's motion to represent himself rendered harmless by defendant's subsequent motion to have new counsel appointed for him), *vacated in other part by Bowker v. United States*, 543 U.S. 1182 (2005).

In short, the content and context of Petitioner's statement suggest that he was simply venting his dissatisfaction with his appointed attorney and with the court's ruling on counsel's motion to withdraw.  Petitioner did not clearly express a desire to represent himself, let alone invoke his right to do so.  In fact, he could have invoked his right to self-representation at any time later in the proceedings, but he did not do so.  Instead, he asked the court to give him a different attorney.  The state court properly determined that his statement was not sufficient to invoke his right to self-representation.  Thus, Petitioner has not shown that he is entitled to relief.

## IV.    Ground II:  Use of Parole Conditions and Recorded Phone Calls

Petitioner contends that he was deprived of due process and his right to confrontation under the Sixth Amendment when the prosecutor used "non-discovered special parole conditions #22 and recorded jail telephone calls" to impeach Petitioner and attack his character at trial without disclosing this evidence to the defense beforehand.  (Am. Pet., PageID.1549.)

### A. Trial Proceedings

During his opening statement, Petitioner's attorney revealed that Petitioner was in and out of his children's lives because he was in prison at various times.  (Trial Tr. I, ECF No. 10-

13

10, PageID.479.)  Petitioner testified in his defense.  On cross-examination, the prosecutor asked Petitioner about specific conditions ordered by the Michigan Parole Board when it released Petitioner from prison in October 2012.  For instance, condition 22 prohibited Petitioner from having "verbal, written, electronic, or physical contact with any individual 17 or under," or attempting to do so.  (Trial Tr. III, PageID.858.)  Petitioner acknowledged that he attempted to reach his children via Facebook, but he denied that this contact violated any condition of his parole.  (*Id.*, PageID.862.)  He testified that condition 22 was not part of his parole conditions when he was paroled; it was added after he was released from prison.  (*Id.*, PageID.859.)

The prosecutor also asked Petitioner whether he recalled telling a friend that he had been accused of a crime against the victim because he once had to pick an earwig off his daughter's vagina.  (*Id.*, PageID.864.)  Petitioner's attorney objected to this question based on relevance.  The court asked the prosecutor where this information came from, and the prosecutor claimed that Petitioner made this statement in a phone call.  The court overruled the objection, and Petitioner acknowledged making that statement to his friend and acknowledged that the statement was not true.  (*Id.*, PageID.865.)

The prosecutor subsequently asked Petitioner whether he recalled telling a friend, Jennifer Ayres, that he had been accused of a crime involving an adult, not a child.  Petitioner acknowledged making that statement to Ayres.  (*Id.*)  The prosecutor then asked Petitioner whether Ayres had called Petitioner because she was concerned for her own children, and Petitioner said, "No."  (*Id.*, PageID.866.)  The prosecutor responded, "Would you like to hear the phone call?"  (*Id.*)  The court interjected at that point because the prosecutor's question was improper.

Petitioner believes that the references to his parole conditions and to the recorded phone call were improper because the prosecutor did not disclose this evidence before trial.

14

## A. Parole Conditions

### 1. State Court Decision

After the close of proofs, Petitioner's attorney claimed that he had not received a copy of Petitioner's parole conditions before trial, and he asked to reopen the proofs to allow his client to explain his position about those conditions.  (*Id.*, PageID.892.)  Petitioner contended that he did not violate his parole because the no-contact condition was added to his parole conditions after he reached out to his children on Facebook.  The court denied the request to reopen the proofs, noting that Petitioner had already explained to the jury that he did not think he violated his parole conditions.  (*Id.*, PageID.893.)

On appeal, Petitioner argued in his *pro per* brief that the prosecutor improperly submitted his parole conditions to the jury without disclosing that evidence before trial, which violated subchapter 6.200 of the Michigan Court Rules, Petitioner's right to due process under the Fourteenth Amendment, and Petitioner's rights under the Sixth Amendment.  (Def.'s Suppl. Br. on Appeal, ECF No. 10-15, PageID.1125-1126.)

The Michigan Court of Appeals resolved this claim as follows:

> Defendant argues that the trial court erred in allowing the prosecutor to cross-examine him regarding special conditions of his parole regarding a previous offense because the prosecutor had not provided him the special parole conditions as a part of discovery.  This unpreserved issue is reviewed for plain error affecting substantial rights.  *Carines*, 460 Mich. at 763.  This latter requirement requires a showing of prejudice, specifically that the error affected the outcome of the lower court proceedings.  *Id.*  The defendant bears the burden of persuasion with respect to prejudice.  *Id.*
>
> Discovery in a criminal case is governed by MCR 6.201.  *People v Phillips*, 468 Mich. 583, 587-588; 663 NW2d 463 (2003).  If a party fails to comply with the discovery rules set forth in MCR 6.201, a trial court may exclude evidence that is not disclosed to the other party.  MCR 6.201(J).  Here, it appears the prosecutor should have disclosed defendant's special parole conditions because they constituted a criminal record the prosecution intended to use to impeach defendant.  See MCR 6.201(A)(4).  Regardless, even if defendant's parole conditions should have been excluded, that evidence merely tended to show that defendant was

15

willing to ignore a parole stipulation in an attempt to contact the victim.  The primary evidence against defendant was the testimony of the victim and the girlfriend's daughter that defendant abused them both.  Defendant provides no explanation of how the exclusion of the challenged evidence would have affected the outcome of his trial.  Defendant failed to show plain error affected his substantial rights.  *Carines*, 460 Mich. at 763.

*Griffis*, 2015 WL 2213711, at *7.

The state court did not expressly analyze Petitioner's constitutional claims, other than to mention that arguments raised by Petitioner that were not discussed in its opinion were "abandoned" and "without merit."  *Id.*  "When a state court rejects a federal claim without expressly addressing that claim, a federal court must presume that the federal claim was adjudicated on the merits[.]"  *Johnson v. Williams*, 568 U.S. 289, 301 (2013).  That presumption can be overcome in "limited circumstances."  *Id.*  Petitioner offers no reason to believe that the state court did not resolve the constitutional claims on their merits.  Thus, the deferential standard of review under the AEDPA applies.

### 3. Analysis

To the extent Petitioner's claim is based solely on a violation of Michigan's discovery rules, it is not cognizable in this action.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  Federal courts have no power to intervene on the basis of a perceived error in applying state law.  *Wilson*, 562 U.S. at 5.

Moreover, as the Supreme Court has explained, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."  *Weatherford v. Bursey*, 429

16

U.S. 545, 559 (1977); *accord Gray v. Netherland*, 518 U.S. 152, 168 (1996).  "Rather, all the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial."  *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).  Thus, a prosecutor's failure to disclose evidence before trial does not necessarily raise a cognizable issue on habeas review.  *See id.*

It is true that suppression by the prosecution of evidence favorable to the defendant violates due process, where the evidence is material to either guilt or punishment of the defendant.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  It is also true that a criminal defendant has a constitutional right to a "meaningful opportunity to present a complete defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984), *quoted in Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  The right to present a complete defense derives from the Sixth Amendment right to compel and confront witnesses and from the Due Process Clause of the Fourteenth Amendment.  *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process law.").

Petitioner's constitutional claims are plainly meritless, whether presented as a *Brady* violation or as a denial of the right to present a meaningful defense.  To demonstrate a *Brady* violation, Petitioner must show three things:  (1) "[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence [was] suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by

showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682).

       *Brady* does not apply here because the prosecutor did not improperly withhold evidence about Petitioner's parole conditions.  Petitioner was already aware of those conditions, as demonstrated by his trial testimony, and they were available from another source (his parole records).  "There is no *Brady* violation 'where a defendant "knew or should have known the essential facts permitting him to take advantage of any exculpatory information," or where the evidence is available . . . from another source,' because in such cases there is really nothing for the government to disclose."  *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (quoting *United States v. Clark*, 928 F.2d 733, 798 (6th Cir. 1991)).

       Moreover, the state court's observation that Petitioner failed to show how the evidence affected his trial undermines his *Brady* claim.  As the court indicated, the evidence regarding Petitioner's parole conditions "merely tended to show that defendant was willing to ignore a parole stipulation in an attempt to contact the victim."  *Griffis*, 2015 WL 2213711, at *7.  This evidence had little or no relevance to his guilt, which was based primarily on the testimony of the victim.  In other words, even if pretrial disclosure of the parole conditions would have given Petitioner a better opportunity to explain to the jury why he did not violate his parole, Petitioner has not shown that there is a reasonable probability that the outcome of his trial would have been different.  Thus, the *Brady* claim is meritless.

       Petitioner's claim fares no better when framed as a denial of the opportunity to present a meaningful defense.  Petitioner had an opportunity to respond to the prosecutor's questions about his parole conditions, and he did so.  The parole conditions themselves were not

in evidence; they were simply a reference point for some of the prosecutor's questions.  The prosecutor attempted to get Petitioner to acknowledge that he violated his parole conditions, but Petitioner would not do so.  Petitioner responded to the prosecutor's questions by explaining that condition 22 was not part of his parole conditions when he attempted to contact the victim.  The jury had no reason to believe otherwise.

In addition, the state court reasonably determined that it did not need to reopen the proofs on this issue.  The Supreme Court repeatedly has recognized that the right to present a defense is subject to reasonable restrictions.  *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987).

> [S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.  Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve.  Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).  The state-court's refusal to reopen the proofs appears to be reasonable, proportionate, and non-arbitrary restriction within the meaning of *Scheffer*.  The United States Supreme Court has never hinted, much less held, that a state court must reopen its proofs after a verdict under any circumstances.  And the entry of a verdict undoubtedly constitutes a reasonable restriction on a defendant's right to introduce evidence in his own defense.

Furthermore, if refusing to reopen the proofs was constitutional error, Petitioner would have to demonstrate that the error was harmful:

> For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in

'actual prejudice.'" [*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)] (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, supra, at 637 (internal quotation marks omitted). The Brecht standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

*Davis v. Ayala*, 135 S. Ct. 2187, 2197-98 (2015) (parallel citations omitted). As indicated, Petitioner has failed to show that he was actually prejudiced by the prosecutor's reference to his parole conditions. Accordingly, Petitioner has failed to show his entitlement to habeas relief.

## B. Phone Calls

### 1. State Court Decision

Petitioner also argued on appeal that the trial court erred when denying his motion to reopen proofs in order to have the prosecutor submit the recorded telephone conversations between Petitioner and Jennifer Ayres. (Def.'s Suppl. Br. on Appeal, ECF No. 10-15, PageID.1130.) Petitioner argued that the trial court's decision deprived him of his rights under the Sixth and Fourteenth Amendments. The Michigan Court of Appeals did not discuss these constitutional claims; the court likely denied them along with other claims that were "abandoned" and "without merit." *Griffis*, 2015 WL 2213711, at *7.

When Petitioner raised the issue again in his motion for relief from judgment, the trial court reasoned:

Defendant argues that the trial court erred in denying Defendant's motion to reopen proofs to allow evidence of impeaching the recorded jail telephone conversation to be presented to the jury. However, defense counsel's request to open proofs was in regards to defendant being questioned about his parole terms. Therefore, the Court finds this argument to be without merit.

(8/16/2016 Order Denying Def.'s Mot. for Relief from J., ECF No. 10-20, PageID.1350.)

20

### 2. Analysis

As indicated by the trial court, the first and most obvious problem with Petitioner's claim is that his attorney did not ask the trial court to reopen proofs for the purpose of admitting the telephone conversations between Petitioner and Ayres.  The judge merely thought that this was the basis for counsel's request, and then denied it.  Petitioner's counsel told the court:

> Ah, first of all, it's in regard to the questioning of my client in regards to Jennifer Ayres. . . .
>
> As I look at the report, the report never indicates that Ms. Ayres had any concern about her children. If the of -- if the Prosecutor went there with my client, knowing that there was no basis for that.  And I believe that was inappropriate.
>
> Secondly, I'm asking for the extraordinary step of the Court allowing me to reopen the proofs to put my client back on the stand in regards to this (inaudible).

(Trial Tr. III, PageID.889.)

The trial court then determined that the prosecutor did, in fact, have a basis for questioning Petitioner about the fact that Ayres expressed concerns about her children in the phone call.  A detective who listened to the recorded phone call recalled that Ayres discussed these concerns with Petitioner.  (*Id.*, PageID.891.)  But because there was no evidence presented to the jury about Ayres' concerns, the court declined to reopen proofs on this issue.  (*Id.*, PageID.891-892.)

Petitioner's attorney responded, "Okay. Well, that -- that particular one wasn't to open proofs.  My request to open proofs was in regards to my client being questioned about this parole, ah, terms."  (*Id.*, PageID.892.)  In other words, Petitioner's attorney indicated that the motion to reopen proofs concerned the parole conditions, not the recorded phone call.  Nowhere in the record did Petitioner or his attorney expressly ask to reopen proofs to admit the phone call. Petitioner's attorney did file a post-judgment motion to obtain the recorded phone call for purposes of appeal (Def.'s Mot. for Trial Ex. & Mot. for New Trial, ECF No. 10-15, PageID.999), but

21

apparently the parties "amicably" resolved this issue, so the motion was denied as moot (4/8/2014 Order, ECF No. 10-15, PageID.1009). Thus, the state court's determination of the facts was not unreasonable.

In light of these facts, the state court's conclusion was a reasonable one. The trial court could not have erred in denying a motion that did not actually exist.

Furthermore, the claim is meritless for the reason indicated by the trial court immediately after trial. The prosecutor asked Petitioner, "Would you like to hear the phone call?" (Trial Tr. III, PageID.891.) This question implied that Ayres expressed her concerns in the recorded phone conversation. When ruling on the motion to reopen proofs, however, the court rightly observed that "Attorneys' questions are not evidence." (Trial Tr. III, PageID.891.) Indeed, the court made this clear to the jury on several occasions. At the start of the trial, the court informed the jury that "[t]he questions the lawyers ask the witnesses are not evidence. Only the answers are evidence. You should not think that something is true just because of the lawyers asks a question that assumes or suggests that it is." (Trial Tr. I, ECF No. 10-10, PageID.468.) The court gave a similar instruction after the close of proofs, telling the jury that "the lawyers' questions to witnesses are not evidence. . . . You should only accept the things the lawyers say that are supported by the evidence, or by your own common sense and general knowledge." (Trial Tr. III, PageID.935.)

To the extent Petitioner claims that he was deprived of a fair trial due to the prosecutor's conduct, he cannot show the requisite prejudice. Conduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

In this case, the prosecutor's question implied that Petitioner was not telling the truth about an ancillary matter (Ayres' concern for her children) that had nothing to do with Petitioner's guilt.  The prosecutor's question was not supported by any evidence, and the court expressly told the jury that the attorneys' questions were not evidence.  The jury is presumed to follow the court's instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  In short, the prosecutor's isolated reference to part of a phone conversation that was not in evidence did not deprive Petitioner of a fair trial, especially in light of the court's clear instructions that attorneys' statements are not evidence.

To the extent Petitioner frames this issue as a *Brady* claim because the prosecutor did not disclose the recorded telephone calls before trial, his claim is meritless because he has not shown that there is any favorable evidence in those recordings.  And even if he could make that showing, the absence of such evidence did not prejudice him.  In light of the court's repeated instructions that attorneys' questions and statements are not evidence, there is no reasonable

probability that the outcome of the proceedings would have been different if the phone calls had been disclosed before trial and admitted into evidence.

For similar reasons, Petitioner cannot succeed if he presents his claim as a denial of the right to present a complete defense. As discussed above with regard to the parole conditions, the state court's decision not to reopen the proofs after the verdict was a reasonable one, not an arbitrary one. Moreover, any error was harmless under the *Brecht* standard. Thus, for all the foregoing reasons, Petitioner's claim is meritless.

## V.    Ground III:  Prosecutorial Misconduct

In Ground III, Petitioner raises several other issues related to the prosecutor's conduct at trial. Among other things, he contends that the prosecutor presented perjured testimony by Candis Blauer and mischaracterized the victim's testimony. These claims are procedurally defaulted and meritless.

### A. Procedural Default

Respondent asserts that Petitioner's claims are procedurally defaulted in two ways. First, Petitioner did not raise them on direct appeal, which the state court noted when denying his motion for relief from judgment. And second, Petitioner did not present these issues on appeal to all levels of the state appellate courts. After the state court denied his motion for relief from judgment, he appealed that decision to the Michigan Court of Appeals but did not timely file an appeal with the Michigan Supreme Court. The Court need address only one of these defaults: Petitioner's failure to raise the issue on direct appeal.

A petitioner has procedurally defaulted a federal claim in state court where:  (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate"

24

state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004).

        All three conditions apply here.  When denying Petitioner's motion for relief from judgment, the trial court held that Petitioner could have raised these issues on appeal, but he did not do so.  (8/16/2016 Order Denying Def.'s Mot. for Relief from J., ECF No. 10-20, PageID.1348.)  He also failed to demonstrate cause and prejudice for that failure.  (*Id.*, PageID.1352.)  He therefore failed to comply with Rule 6.508(D)(3) of the Michigan Court Rules. (*Id.*)  This rule is independent and adequate for purposes of barring further consideration in federal courts.  *McFarland v. Yukins*, No. 991659, 2000 WL 1290125, at *3 (6th Cir. Sept. 5, 2000). Accordingly, the state court enforced a rule that is an independent and adequate ground barring federal habeas review of Petitioner's claims.

        Petitioner has not attempted to establish cause and prejudice to excuse his default. He does not explain the reason for his failure to raise the issue in his direct appeal.  Indeed, he could have raised it in his *pro per* brief to the Michigan Court of Appeals.  Furthermore, Petitioner has not established that he is entitled to the "actual innocence" exception to procedural default. He offers no new evidence to support his innocence.  Accordingly, Ground III is procedurally defaulted.

### B. Merits – Presentation of Perjured Testimony

        Even if these claims were not procedurally defaulted, they would be denied because they are plainly meritless.

### 1. Trial Proceedings

        Candis Blauer testified about an incident involving Petitioner and the victim that was separate from the charged conduct.  Blauer was in a relationship with Petitioner for a few years and lived with him for a while.  (Trial Tr. III, PageID.874-875.)  Once, when the victim was

around seven or eight years old, Petitioner told Blauer that he needed to go into the bathroom to help the victim take a shower.  (*Id.*, PageID.875.)  Petitioner then went into the bathroom and stayed there the entire time that the victim was in the shower, about 15 to 20 minutes.  (*Id.*)  Blauer thought that this behavior was "a little off[.]"  (*Id.*)  This incident was consistent with the victim's testimony that Petitioner would sometimes take a shower with her when she was eight or nine years old.  (Trial Tr. I, ECF No. 10-10, PageID.551.)

On cross-examination, Blauer stated that the shower incident occurred near the end of 2007 or in early 2008, but she acknowledged telling a police detective something different just one week before trial.  She told the detective that the incident occurred near the end of 2006 or in early 2007.  (Trial Tr. III, PageID.878.)  Apparently, the incident could not have occurred in late 2006 or early 2007 because Petitioner was incarcerated during that time.

### 2. State court decision

Petitioner contends that the prosecutor deprived him of a fair trial by presenting Blauer's perjured testimony.  The state court addressed this claim as follows when denying Petitioner's motion for relief from judgment:

> Defendant argues that the prosecutor intended to mislead and prejudice the jury against Defendant by calling Candis Blauer to testify because the witness committed perjury and "the prosecutor was aware of the subject of testimony before Candis was called to testify and was fully apprised of the effect Candis' testimony was intended to have on the jury."  Defendant argues that on cross examination, the witness attempted to change her dates regarding the allegations once she realized that Defendant was in the Department of Corrections during the dates she originally stated.  However, the witness was specifically questioned about this.  The jurors were given a jury instruction regarding witness credibility.  The jurors were directed to rely on their own common sense and everyday experience in deciding whether to believe all, none, or part of any person's testimony.  Thus, Defendant has not shown that he suffered prejudice.
>
> In addition, Defendant has not provided any evidence to show that the witness committed perjury or that the prosecutor intended to mislead or prejudice the jury.  Therefore, the Court finds that Defendant has failed to demonstrate actual prejudice.

26

(8/16/2016 Order Denying Def.'s Mot. for Relief from J., ECF No. 10-20, PageID.1350-1351.)

### 3. Analysis

"'The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).  To succeed on such a claim, Petitioner "'must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.'"  *Id.*  To show falsity, the defendant must demonstrate that the testimony was "'actually perjured'"; "'mere inconsistencies'" are not sufficient to establish knowing use of false testimony. *Id.*; *see also Akrawi v. Booker*, 572 F.3d 252, 265 (6th Cir. 2009) ("The subject statement must be 'indisputably false' rather than 'merely misleading.'" (quoting *Abdus–Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005)).  In turn, "[a] false statement is material . . . and '[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010) (second and third alterations in original) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

The state court reasonably determined that Petitioner failed to show that the prosecutor knowingly presented false testimony, let alone that any false testimony reasonably could have affected the judgment of the jury.  The fact that Blauer gave a different date on a prior occasion does not necessarily mean that her sworn testimony in front the jury was untruthful. Moreover, as indicated by the state court, Petitioner failed to show prejudice because the jury was aware of Blauer's prior inconsistent statement and could judge her credibility accordingly.

### C. Merits - Statements about the victim's testimony

In passing, Petitioner asserts that the prosecutor mischaracterized the victim's testimony.

### 1. Trial Proceedings

The victim testified that, when Petitioner sexually assaulted her, she was scared because "he had a gun in the house." (Trial Tr. I, PageID.550.)  She also testified that Petitioner threatened to kill her with a gun, and that she told this to multiple people. (*Id.*, PageID.562.)  On cross-examination, Petitioner's attorney pointed out that, when the victim was asked at the preliminary examination whether Petitioner had threatened her with a gun, she stated, "No, like I was scared that he would try to do something." (*Id.*, PageID.564.)  Petitioner's counsel asked her if her current testimony was the "complete opposite" of her statement at the preliminary exam, and she affirmed that it was. (*Id.*)  When asked whether she was lying the previous time, she responded, "Mm, yes, I guess." (*Id.*, PageID.566.)  She later accepted counsel's assertion that she had not been truthful in her previous statements about "the gun question[.]" (*Id.*, PageID.578.)

Jim Henry, the government's expert witness in the characteristics and behavior of child sexual abuse victims, provided some context for the victim's statements.  He testified that a child victim of sexual abuse could "misinterpret what a threat would be[.]" (Trial Tr. II, ECF No. 10-11, PageID.716.)  If the perpetrator is a violent person, and owns a gun, the child could think that the gun might be used on them. (*Id.*, PageID.717.)  However, it would be very uncommon for a child to report that a gun was involved, if in fact there was no gun. (*Id.*, PageID.736.)  And for a child to report that they were threatened with a gun, "that's a definitive, usually, very traumatic experience that is not likely to change in terms of [the memory of] that experience[.]" (*Id.*, PageID.737.)  On the other hand, a threat can be nonverbal, and a child can perceive a threat based on their experience, regardless of what is actually said or conveyed to them. (*Id.*, PageID.745-746.)

In his closing statement, the prosecutor implied that the inconsistency in the victim's testimony about the gun threat was a case of mistaken memory or confusion:

28

. . . the Judge will tell you when you judge the credibility of a witness, if you find the witness intentionally or deliberately lied to you, you can disregard everything they said.  If they intentionally lied to you.  Not a mistake because of memory, or trying to confuse a child on a collateral issue about whether or not you were threatened with a gun, or was there a gun.  Jim Henry talked about gun is important to the kid.  That's what's scary.

(Trial Tr. III, PageID.902.)

## 2. Analysis

Petitioner asserts that the victim never testified that she was confused or mistaken. "It is improper for a prosecutor, during closing arguments, to bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial.'" *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)).

The state court did not expressly address this claim when Petitioner raised it in his motion for relief from judgment.  Nevertheless, the claim is meritless because a prosecutor is allowed to "'argue reasonable inferences from the evidence.'"  *Id.*  (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

The prosecutor did not misstate the victim's testimony; he simply offered a reasonable interpretation of it.  The government's expert testified that a child can perceive a threat in some circumstances, even where the threat is not verbalized.  Based on this testimony, the prosecutor could reasonably infer that the inconsistency between the victim's trial testimony and her previous testimony about the gun threat did not mean she had intentionally lied; it could be explained by confusion about what was meant by a threat, i.e., one that Petitioner expressly stated or one that she perceived and believed to be true based on all the circumstances, including the fact that Petitioner possessed a gun.  Thus, the prosecutor's statement was not improper.

### C. Merits – Bolstering witness

Petitioner also claims the prosecutor improperly bolstered the testimony of Petitioner's former girlfriend's daughter, who was also a victim of Petitioner's sexual abuse.

### 1. Trial Proceedings

During his closing argument, the prosecutor discussed some of the testimony in the case, including an incident in which Petitioner's former girlfriend took her daughter to the police station to talk to the police, and then the prosecutor asked the question, "How does that make those little girls liars?"  (Trial Tr. III, PageID.906.)

### 2. Analysis

"Improper vouching, as a form of prosecutorial misconduct, 'occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness.'" *Garcia v. Burt*, No. 17-1951, 2018 WL 846591, at *2 (6th Cir. Feb. 5, 2018) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)).  "'Generally, improper vouching involves either blunt comments [relating to a witness's credibility], or comments that imply that the prosecutor had special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.'"  *Id.* (quoting *Francis*, 170 F.3d at 550).

The prosecutor's question was not improper.  It did not indicate a personal belief in the witness's credibility or imply that the prosecutor had special knowledge of facts that were not known to the jury.  It simply questioned whether certain evidence undermined the witness's credibility.  The question was proper because it focused the jury's attention on the evidence, not on the prosecutor's personal beliefs or special knowledge.

For all the foregoing reasons, Petitioner's claims in Ground III are both meritless and procedurally defaulted.

## VI.    Ground IV:  Insufficient Evidence

Petitioner contends that the evidence was insufficient to convict him beyond a reasonable doubt.  Respondent contends that this claim is meritless and procedurally defaulted.

### A. Procedural Default

Respondent is correct that this claim is procedurally defaulted because Petitioner did not raise it on appeal, which the state court noted when denying this claim.  (8/16/2016 Order Denying Def.'s Mot. for Relief from J., ECF No. 10-20, PageID.1348.)  Petitioner does not allege cause for his failure to raise this claim on appeal.  Nor does he assert an exception to the procedural-default rule.  Thus, this claim is procedurally defaulted for the same reasons as the claims in Ground III.

### B. Merits

Ground IV is also meritless.

### 1. State Court Decision

When examining the merits of the sufficiency-of-the-evidence claim, the state court stated:

> Defendant argues that there was insufficient evidence to support a conviction on all elements to the crime charged.  Defendant alleges that witnesses committed perjury and were impeached with prior statements and testimony.  As discussed above, the jurors were given a juror instruction regarding witness credibility and were directed to rely on their own common sense and everyday experience in decided whether to believe all, none, or part of any person's testimony.  This Court finds that there was sufficient evidence to support the jury's verdict based on the victim's testimony.

(8/16/2016 Order Denying Def.'s Mot. for Relief from J., PageID.1351.)

### 2. Analysis

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational

31

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, where both the *Jackson* standard and the AEDPA apply to the petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The jury found Petitioner guilty of two counts of first-degree CSC with a victim under the age of 13.  Michigan law defines first-degree CSC as "engag[ing] in sexual penetration with another person," where that other person is under 13 years of age.  Under Mich. Comp. Laws § 750.520b(1)(a).  "Any penetration or intrusion, no matter how slight, is sufficient to satisfy the 'penetration' element . . . ."  *People v. Hunt*, 501 N.W.2d 151, 154 (Mich. 1993).  The victim

testified that Petitioner licked her vagina on two different occasions, in 2008 or 2009. (*See* Trial Tr. I, PageID.547, 549.) She was born in 1999, so she would have been less than 13 years old at the time. (*See id.*, PageID.542.)

Petitioner does not argue that the evidence failed to satisfy a particular element of first-degree CSC. Instead, he questions the reliability of the victim's testimony. He argues that the victim's delayed disclosure, the lack of physical evidence of sexual assault, the lack of eyewitness testimony (from someone other than the victim), and discrepancies in the victim's mother's testimony about when and why the victim entered counseling, all point to the fact that the evidence was not sufficient to convict him. However, these are the sort of arguments that *Jackson* forecloses. It was the jury's responsibility to assess the victim's credibility in light of all the circumstances that Petitioner mentions. If the jury believed the victim, her testimony was sufficient to convict Petitioner. In other words, based on the victim's testimony alone, a rational jury could have found Petitioner guilty. Thus, the state court's decision was a patently reasonable one.

In short, Ground IV is both meritless and procedurally defaulted.

## VII.   Ground V:  Other Acts Evidence

Petitioner argues that the trial court deprived him of due process when it admitted evidence that he committed similar acts of sexual assault on his former girlfriend's daughter. Petitioner cites Mich. Comp. Laws § 768.27a and Rule 403 of the Michigan Rules of Evidence. Petitioner contends that the testimony of his former girlfriend's daughter was unreliable.

### A. State Court Decision

The Michigan Court of Appeals discussed this claim as follows:

Defendant also argues that the trial court erred in admitting evidence under MCL 768.27a(1), which provides in relevant part that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence

33

that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."1 Evidence offered under MCL 768.27a is subject to MRE 403.  *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012).  MRE 403 provides that: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Courts should consider the following non-exhaustive factors when deciding whether to exclude admissible evidence under MCL 768.27a for unfair prejudice under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.  [Watkins, 491 Mich at 487-488.]

Admission of evidence under MCL 768.27a is reviewed for an abuse of discretion. *Id.* at 467.

* * *

After the victim testified at trial, the trial court held an evidentiary hearing to address the admission of the testimony of the daughter of defendant's girlfriend under MCL 768.27a.  The girlfriend's daughter was to testify that that there was an incident when defendant told her to lie down on a couch.  After the girlfriend's daughter lay on her back, defendant went "up and down" on her "girl parts" with his penis.  During the incident, defendant had his girlfriend's daughter watch a pornographic video.  After defendant stopped going up and down on her, he sat down and told the girl to suck his penis.  Defendant then "peed" in her mouth. Defendant objected to the admission of the girlfriend's daughter's testimony on the ground that her testimony was unreliable and, therefore, unfairly prejudicial under MRE 403.  After the evidentiary hearing, the trial court admitted the girlfriend's daughter's testimony under MCL 768.27a.  On appeal, defendant reiterates his argument that his girlfriend's daughter's testimony was unreliable and, therefore, unfairly prejudicial under MRE 403.  Specifically, defendant argues that the girlfriend's daughter's testimony was unreliable because both his girlfriend and the victim's mother ended their relationships with him on bad terms.  In support of that argument, defendant references evidence that showed that his girlfriend talked to her daughter before her daughter revealed defendant's abuse in 2009.

Defendant is correct that the record before the trial court indicated that the girlfriend talked to her daughter before she disclosed defendant's abuse and that the girlfriend told her daughter that defendant "was wrong with what he did to other girls" so that her daughter would "know that [she was] not the only one."  Also, the record indicates that the girlfriend's discussion of defendant prompted her daughter

to remember more about defendant's behavior.  Nonetheless, the daughter's testimony does not indicate that her mother instructed her regarding what to say about defendant, and the daughter's testimony does not indicate that her mother's comments to her directly and specifically crafted her testimony about what defendant did to her.  Instead, despite her mother's discussion with her, the daughter's testimony indicated that her own memory of what happened guided her testimony regarding defendant's abuse.  Accordingly, the evidence tended to support the reliability of the girlfriend's daughter's testimony.

Moreover, a review of the other factors found in *Watkins* shows that the girlfriend's daughter's testimony was not unfairly prejudicial under MRE 403.  The girlfriend's daughter's description of defendant's abuse was somewhat similar to the victim's description of defendant's abuse.  The incidents of abuse were also proximate to each other.  There was no indication in the trial court that there were intervening acts between defendant's abuse of the victim and defendant's abuse of his girlfriend's daughter.  Finally, the girlfriend's daughter's testimony was needed to bolster the credibility of the victim's testimony.  The trial court did not abuse its discretion in admitting the girlfriend's daughter's testimony regarding defendant's abuse under MCL 768.27a.  *Watkins*, 491 Mich at 467, 487-488.

*Griffis*, 2015 WL 2213711, at *2-3.

The Michigan Court of Appeals did not expressly address the due-process aspect of Petitioner's claim.  When Petitioner raised this issue again in his motion for relief from judgment, the trial court declined to address it because he had already raised the issue before the court of appeals.  (8/16/2016 Order Denying Def.'s Mot. for Relief from J., PageID.1348.)

### B. Analysis

To the extent Petitioner contends that the state court did not follow Mich. Comp. Laws § 768.27a or properly apply the Michigan Rules of Evidence, he does not state a cognizable claim.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.

35

Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.

State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the Court may not grant relief if it would have decided the evidentiary question differently. The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

To the extent Petitioner objects to the admission of evidence of another bad act, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v.*

*United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates

due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v.*

*Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

> To the extent Petitioner claims that the evidence should not have been admitted

because it was unreliable, he does not offer any Supreme Court authority in support of his

argument, which makes it difficult to conclude that the state court's decision was contrary to, or

an unreasonable application of, clearly established federal law as determined by the Supreme

Court.  When considering a similar claim, the Sixth Circuit stated:

> What [the Supreme Court] has done is hold out the possibility that 'the introduction'
> of 'evidence' in general could be so 'extremely unfair that its admission violates
> fundamental conceptions of justice.  *Dowling v. United States*, 493 U.S. 342, 352
> (1990) (quotation omitted).  Even then, the Court did not elaborate on the meaning
> of "extremely unfair" or "fundamental conceptions of justice," did not grant relief
> to the claimant, and acknowledged that, "[b]eyond the specific guarantees
> enumerated in the Bill of Rights, the Due Process Clause has limited operation."
> *Id.*  That limited due process role makes sense in view of the other lines of defense
> against unreliable evidence:  the constitutional guarantees that produce an
> adversarial system (counsel, process and confrontation) that itself will test the
> reliability of evidence, the state and federal rules of evidence and the jury.  *See*
> *Perry v. New Hampshire*, [565 U.S. 228, 237 (2012)].
>
> Not only does due process have a limited role to play in backing up these other
> mechanisms for testing reliability, but it also states an exceedingly general rule.
> "The more general the rule, the more leeway courts have in reaching outcomes in
> case-by-case determinations," *Yarborough v. Alvarado*, 541 U.S. 652, 664
> (2004)—and, it follows, the less likely a state court's application of the rule will be
> unreasonable.

*Desai v. Booker*, 732 F.3d 628, 631 (6th Cir. 2013).

> Petitioner's counsel had an opportunity to cross-examine the witness regarding her

testimony, and to compare it to previous statements that she made to authorities.  That cross-

examination put the reliability of her testimony squarely before the jury and alleviated the risk of

any unfairness from her testimony.  *See id.* (making the same observation in similar

circumstances).  Accordingly, the state court's decision to allow the testimony from this witness did not deprive Petitioner of due process.

### VIII.    Ground VI:  Ineffective Assistance of Counsel

Petitioner claims that his counsel was ineffective for failing to call "alibi witness" Angela Slager, who would have undermined the victim's credibility.  The victim testified that Petitioner sexually assaulted her on a couch at nighttime, when Slager's son, Mikey, was asleep next to her.  (Trial Tr. I, PageID.546-547.)  According to the victim, Mikey was often at the house when the victim visited Petitioner, but Mikey spent the night there "only a couple times[.]"  (*Id.*, PageID.574.)  According to Petitioner, however, Slager would have testified that her son "had never been to the petitioner's home overnight."  (Am.  Pet., ECF No. 15, PageID.1572.)

Petitioner also claims that counsel was ineffective for failing to investigate the claim of "vaginal penetration" by his girlfriend's daughter, and for failing to investigate "the severity of petitioner's back injury and petitioner's limited physical ability to commit the charged offense."  (*Id.*)

Respondent argues that these claims are meritless and procedurally defaulted.  I agree that they are procedurally defaulted.  Thus, the Court need not address the merits of these claims.

### A. State Court Decision

The trial court noted that Petitioner did not raise this claim on appeal, and then denied the claim because Petitioner did not demonstrate cause and prejudice:

> To demonstrate ineffective assistance of counsel, Defendant must show that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  *People v Pickens*, 446 Mich 298, 309 (1994); *People v Toma*, 462 Mich 281, 302 (2000). Effective assistance of counsel is presumed; Defendant bears a heavy burden of proving otherwise.  *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

The defendant must also overcome a strong presumption that counsel's decisions did not constitute sound trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), citing *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997).  There is no evidence that Defendant was denied adequate counsel.  As the Court of Appeals stated, the record does not support the existence of good cause based on a lack of diligence or interest on trial counsel's part.  Defendant could have also raised these issues on appeal, but failed to do so.  Furthermore, Defendant has not shown that the result of the proceedings would have been different. Therefore, the Court finds that Defendant has failed to demonstrate good cause and actual prejudice.

(8/16/2016 Order Denying Def.'s Mot. for Relief from J., PageID.1349.)

## B. Procedural Default

The claims in Ground VI are procedurally defaulted for the same reasons as the claims in Grounds III and IV.  The state court found that Petitioner did not raise the claims on direct appeal, and did not show cause and prejudice as required by the Michigan Court Rules. Petitioner has not argued cause and prejudice to excuse his procedural default, and has not shown that he is entitled to an exception to procedural default.  Accordingly, these claims are barred.

## Conclusion

For the foregoing reasons, I conclude that the amended petition for habeas corpus should be denied because the grounds for relief are meritless and/or procedurally defaulted.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

Where a court dismisses a claim on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Both showings must be made to warrant the grant of a certificate.  *Id.*

I find that reasonable jurists could not conclude that denial of Petitioner's claims, on the merits and/or because they are procedurally defaulted, would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated: July 15, 2019                               /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  U.S. Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).